Filed 9/25/13  National Security Systems v. Houalla Enterprises CA2/3
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NATIONAL SECURITY SYSTEMS, INC., | B241674 |
| Plaintiff, Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. BC453387) |
| v. | |
| HOUALLA ENTERPRISES, LTD., | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

The Cigel Law Group, Rick A. Cigel and Michael B. Kadish for Plaintiff, Cross-defendant and Appellant.

Fingal, Fahrney & Clark and Christopher R. Clark for Defendant, Cross-complainant and Respondent.

Plaintiff, cross-defendant and appellant National Security Systems, Inc. (National), a subcontractor, appeals a net judgment in the sum of $25,942.12 in favor of the general contractor, defendant, cross-complainant and respondent Houalla Enterprises, Ltd. dba Metro Builders & Engineers Group, Ltd. (Metro) following a court trial.

The essential issues presented are whether the trial court erred in awarding Metro $10,083.86 in damages for prevailing wage violations, and $25,200 in damages for 21 days of delay (at the rate of $1,200 per day).

We perceive no error in the trial court's rulings and affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Metro was the general contractor on a construction project for the City of Los Angeles (City) known as the "Air Treatment Facility ECIS – La Cienega and Jefferson," located at 3410 La Cienega Boulevard in Los Angeles. Because the City was the owner, this was a prevailing wage project.[1]

On September 17, 2007, Metro and National, a commercial fire alarm installation company, entered into a written subcontract whereby National agreed to provide and install fire alarm protection equipment for the project. The subcontract amount, including change orders, was $93,860.

In October 2010, a dispute arose between the parties over National's work. Metro accused National of installing the system improperly. The parties failed to resolve their differences and Metro removed National as the fire alarm subcontractor on the project.

National served a stop notice on the City, and the City withheld funds in the sum of $18,670 from Metro.

---

[1] Labor Code section 1774 states: "The contractor to whom the contract is awarded, and any subcontractor under him, shall pay not less than the specified prevailing rates of wages to all workmen employed in the execution of the contract."

On December 27, 2010, National filed suit against Metro for breach of contract, seeking to recover $18,670 for its work on the project.

Metro answered and filed a cross-complaint against National. Metro alleged, inter alia, that National's nonperformance, which required retention of another subcontractor to complete the work, delayed the entire project and cost Metro at least 40 days of compensation from the City at $1,200 per day. In addition, on July 14, 2011, the City determined that National failed to pay specified wage rates to its workers on the project. National refused to pay wage restitution to its workers, and thereby caused $11,643 in damages to Metro "for the expense of having to cover this amount to the City."

In April 2012, the matter was tried to the court without a jury. The trial court found National was entitled to damages in the sum of $13,541.28 against Metro, and that Metro incurred damages against National in the sum of $39,483.40. Metro's damages included delay damages of $25,200 for 21 days of delay at the rate of $1,200 per day, and $10,083.36 for the wages and penalties paid to the City on account of labor issues. The net award was in favor of Metro in the sum of $25,942.12. The trial court further found that Metro was the prevailing party.

National filed a timely notice of appeal from the judgment.

## CONTENTIONS

National contends the trial court committed reversible error in awarding Metro $10,083 on account of the City's prevailing wage demands, and $25,200 in liquidated damages on its delay claim.

## DISCUSSION

1. *Trial court properly awarded Metro $10,083.86 on account of the City's prevailing wage demand.*

   a. *National's arguments.*

National contends Metro failed to present any evidence at trial National was legally liable for the amounts demanded, no evidence was introduced at trial that the City had filed a lawsuit or that any judicial or administrative body had adjudicated

3

National's liability for the amount demanded, and the uncontroverted evidence establishes National was not legally liable for the amount demanded by the City. National's arguments are unavailing.

  b. *Substantial evidence supports the award of $10,083.86 to Metro for wages and penalties it paid on National's account.*

  (1) *Factual summary.*

In June 2011, the City's Contract Compliance Department requested payroll information from National with respect to the project. Specifically, the City requested Certified Payroll Reports (CPR's) for the project, as well as a fringe benefit statement and check numbers and "copies of cancelled checks corresponding to the CPRs."

On June 15, 2011, Metro sent an email to National requesting the information sought by the City.

Chris Schroeder (Schroeder), president of National, emailed his staff as follows: "*Don't respond to this in any way.*" (Italics added.) [2]

On July 14, 2011, the City sent a certified letter to Metro, with a copy to National, stating that Metro's subcontractor, National, had failed to pay "the specified prevailing wage rates to workers employed in the execution of the above contract." The letter asserted the "*certified payroll records, inspector logs, and pertinent payroll documents submitted to our office, substantiate an underpayment of wages.*" (Italics added.) The City's letter advised that Labor Code sections 1774 and 1815 "specify that prevailing wage must be paid at all times for public works projects." Further, any contractor found to be in violation of underpayment "may be penalized according to Sections 1775 and 1813 of the California Labor Code," *and that a "portion of your*

---

[2] At trial, Schroeder admitted he had instructed his staff not to respond to Metro, but Schroeder asserted *the City* never requested him to provide documents. The documentary evidence is to the contrary. The record reflects, inter alia, the City copied National on the July 14, 2011 certified letter it sent to Metro. Schroeder also testified he did not recall whether he received a vendor request for documents from Metro, dated June 15, 2011, wherein Metro reiterated a request for payroll documentation.

*retention payment may be withheld until this matter is satisfactorily resolved*," pursuant to Labor Code section 1727. Attached to the July 14, 2011 letter from the City was a "Summary of Wage Restitution and Penalty Log" reflecting the total wage restitution and applicable penalties, which amounted to $11,643.86 for five employees.[3]

On July 14, 2011, Metro again emailed National, stating: "*We have repeatedly requested you to provide us or the Owner with missing contract compliance documentation. Your refusal to respond, left us, unfortunately, no choice but to inform the City that you are not cooperating on this contractually binding matter. Public Works code and your subcontract agreement with us binds you to provide records requested by the Owner's Contract Compliance department. We will back charge you all fees, penalties, liquidated damages and any other expense we will incur by your noncompliance with this legal requirement.*" (Italics added.)

On July 20, 2011, Metro's counsel sent a letter to National's counsel, again requesting compliance with the City's request for documentation, and attaching a copy of the City's July 14, 2011 letter demanding wage restitution in excess of $11,000, to no avail.

On August 10, 2011, Metro paid the City a reduced penalty of $440 and also issued checks to the five affected individual employees, for a total of $10,083.86 on account of National's failure to pay prevailing wages.

At trial, National took the position it had duly paid its employees and that it had supplied Metro with everything it needed to avoid the penalty. At the time of closing argument, the following colloquy occurred between the trial court and National's counsel:

---

[3] The July 14, 2011 letter, exhibit 86, was admitted into evidence without objection. Although there was no testimony at trial showing how the City determined the amount of the underpaid wages set forth in its demand letter, exhibit 86, which came in without objection, establishes the amount of the City's demand.

"MR. CULLEN:  Our client provided them with everything that they needed to avoid the penalty.

"THE COURT:  How do I know that?

"MR. CULLEN:  Mr. Schroeder's testimony.

"THE COURT:  Okay.  But why aren't there fax cover sheets?  *There's just no evidence whatsoever.*

"MR. CULLEN:  My client had some turnover at his office after this was over.  As you heard Ms. Lewis was in charge of that.  She no longer works for him.[**4**]

"THE COURT:  But even if he supplied it, what I would call is a complete lack of cooperation, if he had looked around and gotten his files and found what he showed me during the trial and sent it off to them because it was somewhat specific, no one would have had to pay it; right?

"MR. CULLEN:  That would be – that would probably be correct, Your Honor."

(2)  *Trial court properly awarded Metro $10,083.86, to compensate Metro for the amount it paid on National's account.*

To recap, the City sent a deficiency notice to Metro, indicating that subcontractor, National, owed a total of $11,643.86 in unpaid wages and penalties.  The City calculated that figure based on its review of payroll records that had been submitted to the City's Office of Contract Compliance.

Metro repeatedly requested National to furnish the payroll documentation which had been requested by the City.

National failed to respond.

---

**4**      What the record does show is that on June 15, 2011, after National received a request from Metro for payroll documentation, Schroeder emailed Christine Lewis stating  "Don't respond to this in any way."  National's attempt to attribute its nonresponse to "turnover" at the office is inconsistent with Schroeder's directive to Lewis not to respond to Metro's request for documentation.

Metro, *lacking documentation from National to refute the City's demand, and faced with the City's threat to withhold payment from Metro*, paid the amount demanded by the City, while managing to have the penalty reduced to $440 from the original penalty amount of $2,000.

Metro then sued National to recover the $10,083.86 it paid on National's account.

At trial, National contended the two John Does listed in the deficiency notice were not employees of National, and that it had fully paid the other three employees listed in the notice, namely, Ortega, Nevarez and Quintero. National also claimed it had supplied Metro with all the documentation that it needed, or alternatively, that inadequate documentation was due to "some turnover at [its] office."

The trial court held Metro was entitled to recover the $10,083.86 from National, stating: "[T]he court finds as to the penalties paid to the City because of the labor issues, one, I do not think there is sufficient proof that the documentation was fully and properly given to [Metro], but within any definition of reasonableness . . . , a simple followup by [National] could have and should have and would have provided the ability for [Metro] not to pay that amount."

Clearly, at the time the City attempted to ascertain whether National's employees had been properly paid, National, as their employer, was in the best position to know and had the best access to evidence on the issue, i.e., in the form of its own payroll records. Moreover, the subcontract obligated National to provide Metro with certified payroll reports.

Metro was damaged by National's failure to supply the payroll documentation that Metro requested. As the trial court found, a simple followup by National would have enabled Metro not to have to pay the amount demanded by the City. Leaving aside whether National actually had underpaid its employees, Metro was damaged by National's refusal to controvert the City's deficiency notice. Given the lack of any documentation from National to refute the deficiency notice, and the City's threat to

7

withhold funds due to Metro, Metro reasonably complied with the City's demand for payment.

We note that in addition to requiring National to pay prevailing wages, the subcontract required National to provide payroll documentation, indemnify Metro for all claims arising out of National's performance of the work, and allowed Metro to pay and deduct amounts as a result of National's failure to perform any provisions in the subcontract. To quote, "If the Sub-Contractor should neglect to prosecute the work properly *or fail to perform any provisions of this contract*, . . . the Contractor after three days written notice to the Subcontractor, shall take corrective measures *and deduct the cost thereof from any payment then or thereafter due to the Sub-Contractor*." (Italics added.)

Under these circumstances, the trial court properly awarded Metro $10,083.86 to make it whole for the wages and penalties it paid on National's account.

c. *No merit to National's arguments*.

National's arguments to the contrary are without merit. In attacking the damage award, National's contention on appeal is that "*Metro failed to present any evidence that [National] was legally liable for the amounts the City demanded*. No evidence was presented at trial that the city filed a lawsuit or that either the Division of Labor Standards Enforcement or the Office of the Labor Commissioner adjudicated any wage claims. In fact, the uncontradicted evidence produced at trial established that [National] was not legally liable for the amount demanded by the City or voluntarily paid by Metro."

The City's Office of Contract Compliance made a determination, based on its review of payroll records that had been submitted to it, that National owed wage restitution and penalties totaling $11,643.86. The subcontract, in addition to requiring National to pay prevailing wages to its employees, obligated National to furnish documentation, including certified payroll reports, to Metro. The subcontract also entitled Metro, upon three days notice to National, to "take corrective measures *and deduct the cost thereof from any payment then or thereafter due to the Sub-*

8

*Contractor*." (Italics added.) The record reflects National flatly refused to supply the necessary payroll documentation, despite repeated requests by Metro. Having failed to supply Metro with the requested payroll documents to demonstrate that National's employees had been duly paid, National is not in a position to object to Metro's payment of wage restitution and penalties totaling $10,083.86 to National's employees and to the City, as demanded by the City.[5]

2. *No error in trial court's award of $25,200 to Metro as delay damages for 21 days of delay at the rate of $1,200 per day.*

National contends the trial court erred in awarding delay damages to Metro because (1) the subcontract between Metro and National did not specify a completion date; and (2) Metro failed to prove at trial it was obligated under its agreement with the City to pay delay damages of $1,200 per day.

National's arguments are unavailing. National's focus on the terms of the subcontract is misplaced. As explained below, National delayed the project, requiring Metro to retain a new subcontractor. Metro's contract with the City entitled Metro to $1,200 per day for City-caused delays (as opposed to concurrent delays). Had National not delayed the project, Metro would have been able to recover for 21 additional days of delay by the City. Therefore, the trial court properly awarded Metro delays damages for said 21 days.

---

[5]     In its appellant's reply brief, National argues that neither Metro nor National was under any obligation to pay the City the sums demanded by its letter, and that the prevailing wage statutory scheme requires an investigation, the withholding of contract funds, and the issuance of a formal wage and penalty assessment notice. (Appellant's reply brief, pp. 7-10, citing Lab. Code, §§ 1726, 1771.6.) National asserts that by "voluntarily paying the sums demand, Metro circumvented the procedural safeguards provide[d] by this scheme and assumed an unproven, unliquidated debt it was not obligated to assume," and because there was no evidence the sums paid by Metro on account of wage restitution and penalty assessments was in fact owed, the judgment should be reversed. National's statutory arguments, belatedly raised in the reply brief, require no discussion. (*Tisher v. California Horse Racing Bd*. (1991) 231 Cal.App.3d 349, 361.)

9

a. *National delayed the project, forcing Metro to replace National with a new subcontractor.*

On September 17, 2010, Metro directed National to proceed with the final inspection on the fire alarm system for the project, based on National's confirmation the system had been tested and was "good to go" for the inspection.

On September 30, 2010, National contended the "Fire alarm final failed because Metro Builders tampered with the fire alarm system therefore damaging the system and voiding the system warranty."

Metro responded: "You state that inspection failed because of our actions, although no fire alarm inspection even took place (the fire alarm inspection last request on record was for May). [¶] We inspected the panels to see if there was any damage to them, and could not see any. We are hiring another fire alarm company to come and verify this."

The independent fire alarm company determined there was no wrongdoing by Metro "but instead outline[d] many items not in compliance with the plan and with the code."

On October 13, 2010, Metro advised National, "Now that we understand what needs to be done to complete the job I will request you to complete this job and provide final inspection in the next 48 hrs. After this time I will hire all necessary recourses to complete the job and all cost incurred will be charged back to your company."

National did not correct its work and on October 18, 2010, Metro advised National it was being replaced by another subcontractor "capable of completing the fire alarm system."

On December 17, 2010, the Department of Building and Safety approved the final inspection, and the fire marshal gave its approval on December 27, 2010.

b. *The contract between the City and Metro entitled Metro to $1,200 per day for City-caused delays; National's delay created a period of "concurrent" delay for which National was not compensated by the City; therefore, the trial court properly awarded delay damages to Metro for the period of delay caused by National.*

The contract between Metro and the City provided that Metro would be compensated for City-caused delays at the rate of $1,200 per day. On the other hand, for "concurrent delay," that is to say, those days during which *both* Metro and the City were delaying the project, Metro was not entitled to compensation by the City.

At trial, John Metoyer of Nitro Consultants, a construction management firm, testified that National caused 40 days of concurrent delay on the project. Based thereon, Metro sought 40 days of delay damages from National, at the rate of $1,200 per day. The trial court found "there was some delay but not 40 days." The trial court ruled that Metro was entitled to delay damages for 21 days of delay attributable to National.

Civil Code section 3300 provides, "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Therefore, Metro was entitled to recover damages to compensate it for the loss it incurred due to National's conduct.

Here, the City compensated Metro for 219 days of delay. However, had National not delayed the project, Metro would have been entitled to numerous additional days of compensable delay. Metoyer's testimony established that National's conduct resulted in a period of "concurrent delay," as contrasted with City-caused delay. Therefore, the trial court properly awarded delay damages to Metro for the period of delay caused by National, because National's delay created a concurrent delay that was not compensable by the City.

11

## DISPOSITION

The judgment is affirmed.  Metro shall recover its costs on appeal, as well as reasonable attorney fees on appeal, pursuant to the subcontract.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

KITCHING, J.

12